UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| ALAN DERUCHIA, Individually and For Others Similarly Situated,<br><br>v.<br><br>ALCOA USA CORP. | Case No. _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

S<small>UMMARY</small>

1. Alan Deruchia (Deruchia) brings this class and collective action lawsuit to recover unpaid wages and other damages from Alcoa USA Corp. (Alcoa).

2. Alcoa employed Deruchia as one of its Hourly Employees (defined below).

3. Alcoa pays Deruchia and the other Hourly Employees by the hour.

4. The Hourly Employees regularly work more than 40 hours a week.

5. But Alcoa does not pay them for all their hours worked, including hours worked in excess of 40 a workweek.

6. Rather, Alcoa requires Deruchia and the other Hourly Employees to suit out in protective clothing and safety gear necessary to performing their jobs, gather tools necessary to performing their jobs, and then perform equipment inspections, all while on Alcoa's premises, "off the clock" and without compensation (Alcoa's "pre-shift off the clock policy").

7. Alcoa does not pay Deruchia and other Hourly Employees for this time they spend donning their safety gear and protective clothing, gathering tools, and inspecting equipment.

8. Alcoa's pre-shift off the clock policy violates the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) by depriving Deruchia and the other Hourly Employees of overtime wages when they work in excess of 40 hours a workweek.

9. Additionally, Alcoa does not pay Deruchia and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 40 a week.

10. Instead, Alcoa pays Deruchia and the other Hourly Employees non-discretionary performance and attendance bonuses that it fails to include in their regular rates of pay for overtime purposes (Alcoa's "bonus pay scheme").

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13. This Court has general personal jurisdiction over Alcoa because it is registered to do business in the Commonwealth and maintains its principal place of business in Pittsburgh, Pennsylvania.

14. Venue is proper because Alcoa maintains its principal place of business in Pittsburgh, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

15. Deruchia worked for Alcoa (and its predecessor) as a Pot Room Mechanic in Massena, New York from approximately March 1993 until November 2024.

16. Deruchia's written consent is attached as **Exhibit 1**.

17. Throughout his employment with Alcoa, it has applied its pre-shift off the clock policy to him, as well as paid him under its bonus pay scheme.

18. Deruchia brings this class and collective action on behalf of himself and all other similarly situated Alcoa employees who worked under its pre-shift off the clock policy and/or whom Alcoa paid under its bonus pay scheme.

19. Deruchia seeks to represent an FLSA collective and a class under the NYLL pursuant to FED. R. CIV. P. 23.

20. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who worked at one of Alcoa's aluminum smelting facilities during the past 3 years. (the "FLSA Collective Members").**

21. The putative class of similarly situated employees is defined as:

> **All hourly employees who worked at one of Alcoa's aluminum smelting facilities in New York during the past 6 years and 228 days[1] (the "New York Class Members").**

22. The FLSA Collective Members and New York Class Members are collectively referred to as the "Hourly Employees."

23. Alcoa is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.

24. Alcoa can be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

## COVERAGE UNDER THE FLSA

25. At all relevant times, Alcoa has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

26. At all relevant times, Alcoa has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r)(2)(A).

27. At all relevant times, Alcoa has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because Alcoa provides healthcare staffing and consulting services. 29 U.S.C. § 203(s)(1)(B).

28. At all relevant times, Alcoa has had an annual gross volume of sales made or business done of at least $1,000,000.

29. At all relevant times, Alcoa has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, tools, personal protective equipment, etc. that have been moved in or produced for commerce.

30. At all relevant times, Deruchia and the other FLSA Collective Members have been Alcoa's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

31. At all relevant times, Deruchia and the other FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

### FACTS

32. Alcoa states that its "roots date to the discovery of aluminum more than 135 years ago, and today [it is] reinventing the aluminum industry for a more sustainable future."[2]

33. Alcoa touts that its Massena, New York operation "is home to the world's oldest continuously operating smelter."[3]

---

[2] https://www.alcoa.com/global/en/what-we-do/aluminum (last visited December 20, 2024).

[3] https://www.alcoa.com/global/en/who-we-are/stories/releases?id=2022/06/alcoas-massena-operations-celebrates-its-120th-anniversary- (last visited December 20, 2024).

34. To meet its business objectives, Alcoa hires employees, like Deruchia and the other Hourly Employees to process aluminum.

35. While exact job titles and job duties may differ, these employees are subjected to the same or similar pre-shift off the clock policy for similar work.

36. Likewise, these employees are subject to the same or similar bonus pay scheme.

37. For example, Alcoa employed Deruchia as a Pot Room Mechanic at its Massena, New York aluminum smelting facility from approximately March 1993 until November 2024.

38. As a Pot Room Mechanic, Deruchia's job duties included maintaining and repairing a wide variety of mechanical equipment such as overhead cranes, chains, sprockets, gears, conveyors, and hydraulic components in and around the "pot room," which is the building where electrolysis cells produce aluminum from raw materials.

39. Deruchia's job duties likewise included donning his safety gear and protective clothing, gathering tools, and inspecting equipment, before his scheduled shifts.

40. Deruchia was Alcoa's hourly employee.

41. Specifically, Alcoa paid Deruchia approximately $35 an hour.

42. Throughout his employment, Deruchia's supervisor recorded his "on the clock" hours worked via Alcoa's designated timekeeping system.

43. Thus, Alcoa's employment records reflect Deruchia's supervisor-recorded, "on the clock" hours.

44. Throughout his employment with Alcoa, Deruchia regularly worked more than 40 hours a workweek.

45. Indeed, throughout his employment, Deruchia typically worked 12 hours a workday "on the clock," alternating between 3 and 4 days a workweek (36 and 48 hours a workweek).

46. But Alcoa did not pay Deruchia for all his hours worked.

47. Instead, Alcoa subjected Deruchia to its pre-shift off the clock policy.

48. Specifically, Alcoa required Deruchia to dress out in protective clothing and safety gear (including gloves, steel toe boots, wool clothing, safety glasses, hard hat), gather tools (including wrenches, hammers, screw drivers, pry bar, crowbar, welding equipment, air tools, die grinder, impact wrench, sawzaw), travel on foot or by vehicle 300+ yards to the pot room and smelter facility, inspect pumps, air compressors, and other equipment to ensure they were in good working order, all prior to his scheduled shift, "off the clock" and without compensation.

49. Completing these job duties "off the clock" took Deruchia approximately 45 minutes each workday.

50. Deruchia could not perform his job as a mechanic in accordance with Alcoa's policies, procedures, and expectations without donning this protective clothing and safety gear, gathering the necessary tools, and inspecting equipment.

51. Deruchia could not safely perform his job duties in accordance with Alcoa's policies, procedures, and expectations without this protective clothing and safety gear, gathering his tools, and inspecting equipment.

52. Deruchia would have no means of maintaining or repairing pot room machinery without the appropriate tools.

53. Deruchia would violate Alcoa's policies and procedures and lack necessary protections against hazardous work conditions inherent to industrial aluminum production without donning his protective gear.

54. The donning of protective clothing and safety gear, gathering tools, and inspecting equipment were therefore integral and indispensable work duties for Deruchia each workday.

55. But under its pre-shift off the clock policy, Alcoa did not compensate him for the same.

56. Thus, because of its pre-shift off the clock policy, Alcoa failed to pay Deruchia overtime wages for all his overtime hours worked, in willful violation of the FLSA and NYLL.

57. Deruchia and the other Hourly Employees perform their jobs under Alcoa's supervision and use materials, equipment, and technology Alcoa approves and supplies.

58. Alcoa requires Deruchia and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

59. Deruchia's and the other Hourly Employees' work must adhere to the uniform quality and safety standards put in place by Alcoa.

60. At the end of each pay period, Deruchia and the other Hourly Employees receive wages from Alcoa that are determined by common systems and methods that Alcoa selects and controls.

61. Like Deruchia, the other Hourly Employees typically work approximately 12 hours a day "on the clock," for 3 to 4 days a workweek (36 to 48 hours a workweek).

62. But, just as with Deruchia, Alcoa fails to pay the other Hourly Employees for all their hours worked.

63. Indeed, Alcoa subjects its other Hourly Employees to the same or similar pre-shift off the clock policy it imposed on Deruchia.

64. Specifically, just as with Deruchia, Alcoa requires them to dress out in protective clothing and safety gear (including gloves, steel toe boots, wool clothing, safety glasses, hard hat), gather tools (including wrenches, hammers, screw drivers, pry bar, crowbar, welding equipment, air tools, die grinder, impact wrench, sawzaw), travel on foot or by vehicle 300+ yards to the pot room and smelter facilities, inspect pumps, air compressors, and other equipment to ensure they are in working order, "off the clock," and without compensation.

65. But, like Deruchia, the other Hourly Employees are forced to perform this integral and indispensable work "off the clock" before their shifts for Alcoa's predominant benefit.

66. Just as with Deruchia, the other Hourly Employees could not perform their job duties in accordance with Alcoa's policies, procedures, and expectations without donning their protective clothing and safety gear, gathering their tools, and inspecting equipment.

67. Thus, just as with Deruchia, Alcoa does not pay the other Hourly Employees for this compensable work they perform "off the clock" before their scheduled shifts.

68. And, just as with Deruchia, these job duties take the other Hourly Employees approximately 45 minutes to complete each workday.

69. Alcoa fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" that Alcoa does not want performed.

70. And Alcoa knows, should know, or recklessly disregards whether Deruchia and the other Hourly Employees routinely perform work "off the clock," and without compensation, before their scheduled shifts.

71. Thus, Alcoa requires, requests, suffers, permits, or allows Deruchia and the other Hourly Employees to work "off the clock," without compensation.

72. Despite accepting the benefits, Alcoa does not pay Deruchia and the other Hourly Employees for the compensable work they perform "off the clock" before their scheduled shifts.

73. Thus, under Alcoa's pre-shift off the clock policy, Deruchia and the other Hourly Employees are denied overtime pay for the compensable work they perform "off the clock" before their scheduled shifts during workweeks in which they work more than 40 hours, in violation of the FLSA and the NYLL.

74. And throughout their employment, Alcoa has not paid Deruchia and the other Hourly Employees at the required overtime premium rate, based on all remuneration, for all hours worked in excess of 40 a workweek.

75. Instead, Alcoa pays Deruchia and the other Hourly Employees under its bonus pay scheme.

76. Specifically, Alcoa pays Deruchia and the other Hourly Employees non-discretionary bonuses, including performance and attendance bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

77. Thus, under Alcoa's bonus pay scheme, it does not pay Deruchia and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

78. And Deruchia and other Hourly Employees have complained to supervisors, HR, and/or Alcoa management about their unpaid and underpaid overtime compensation.

79. Thus, Alcoa uniformly imposes its pre-shift off the clock policy and bonus pay scheme on Deruchia and the other Hourly Employees, in willful violation of the FLSA and NYLL.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

80. Deruchia brings his claims individually and on behalf of the other Hourly Employees as an FLSA collective action and NYLL class action pursuant to FED. R. CIV. P. 23.

81. Like Deruchia, the other Hourly Employees are victimized by Alcoa's pre-shift off the clock policy and bonus pay scheme.

82. Other Hourly Employees worked with Deruchia and indicated they were paid in the same manner, performed similar work, and were subject to Alcoa's same pre-shift off the clock policy and bonus pay scheme.

83. Based on his experience with Alcoa, Deruchia is aware Alcoa's pre-shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

84. The Hourly Employees are similarly situated in the most relevant respects.

85. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime pay.

86. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

87. Rather, Alcoa's uniform pre-shift off the clock policy and bonus pay scheme render Deruchia and the other Hourly Employees similarly situated for the purpose of determining their right to overtime pay.

88. The Hourly Employees are so numerous that joinder of each in a single action would be impracticable.

89. Alcoa's records reflect the number of hours the Hourly Employees worked "on the clock" each workweek.

90. Alcoa's records also show how, and what, it paid the Hourly Employees for the hours they recorded working.

91. The back wages owed to Deruchia and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

92. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Alcoa's records, and there is no detraction from the common nucleus of liability facts.

93. Therefore, the issue of damages does not preclude class or collective treatment.

94. Deruchia's experiences are therefore typical of the experiences of the other Hourly Employees.

95. Deruchia has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

96. Like each Hourly Employee, Deruchia has an interest in obtaining the unpaid wages owed under federal and New York law.

97. Deruchia and his counsel will fairly and adequately protect the interests of the Hourly Employees.

98. Deruchia retained counsel with significant experience in handling complex class and collective action litigation.

99. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

100. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Alcoa will reap the unjust benefits of violating the FLSA and NYLL.

101. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

102. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Alcoa.

103. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

104. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

105. Among the common questions of law and fact are:

    a. Whether Alcoa imposed its pre-shift off the clock policy on the Hourly Employees;

    b.    Whether Alcoa's pre-shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

    c.    Whether Alcoa paid the Hourly Employees non-discretionary bonuses;

    d.    Whether Alcoa engaged in a policy or practice of failing to include non-discretionary bonuses paid to the Hourly Employees in their regular rates of pay for the purpose of calculating overtime pay;

    e.    Whether Alcoa failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

    f.    Whether Alcoa's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

    g.    Whether Alcoa's violations were willful?

106.    Deruchia knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

107.    As part of its regular business practices, Alcoa intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Deruchia and the other Hourly Employees.

108.    Alcoa's pre-shift off the clock policy and bonus pay scheme deprived Deruchia and the other Hourly Employees of the overtime wages they are owed under federal and New York law.

109.    There are many similarly situated FLSA Collective Members who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

110. The Hourly Employees are known to Alcoa, are readily identifiable, and can be located through Alcoa's business and personnel records.

### ALCOA'S VIOLATIONS WERE WILLFUL

111. Alcoa knew it was subject to the FLSA's and NYLL's respective overtime provisions.

112. Alcoa knew the FLSA and NYLL required it to pay non-exempt employees, including Deruchia and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 a workweek.

113. Alcoa knew Deruchia and each Hourly Employee worked more than 40 hours in at least one workweek during the relevant periods because Alcoa required them to report their "on the clock" hours to Alcoa.

114. Alcoa knew Deruchia and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

115. Alcoa knew the FLSA and NYLL required it to pay non-exempt employees, including Deruchia and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

116. Alcoa knew Deruchia and each Hourly Employee worked more than 40 hours in at least one workweek during the relevant periods because Alcoa recorded their "on the clock" hours to via its timekeeping system.

117. Alcoa knew it paid the Hourly Employees according to its pre-shift off the clock policy.

118. Alcoa knew it had a duty to ensure the Hourly Employees were not performing work "off the clock," without pay.

119. Alcoa knew it required the Hourly Employees to don safety gear and protective clothing, gather tools, travel to their work areas, and inspect equipment "off the clock."

13

120. Alcoa controlled the Hourly Employees' work procedures.

121. Alcoa knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

122. Alcoa knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

123. Alcoa knew the Hourly Employees routinely performed this daily, required "off the clock" work for Alcoa's predominant benefit.

124. In other words, Alcoa knew the Hourly Employees performed compensable work (donning their safety gear and protective clothing, gathering tools, traveling to the smelter facilities, and inspecting equipment) "off the clock" and without compensation.

125. Alcoa knew it paid Deruchia and the other Hourly Employees non-discretionary bonuses.

126. Alcoa knew these non-discretionary bonuses were not included in Deruchia's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

127. And Alcoa knew the FLSA and NYLL required it to pay Deruchia and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

128. Alcoa knew Deruchia and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

129. Thus, Alcoa knew, should have known, or recklessly disregarded whether it failed to pay Deruchia and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

130. Alcoa's failure to pay Deruchia and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

131. Alcoa knowingly, willfully, and/or in reckless disregard of the FLSA and NYLL carried out its unlawful bonus pay scheme and pre-shift off the clock policy that deprived Deruchia and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in willful violation of the FLSA and NYLL.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE MEMBERS)

132. Deruchia brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

133. Alcoa violated, and is violating, the FLSA by failing to pay Deruchia and the other FLSA Collective Members overtime wages of at least 1.5 times their regular rates of pay, based on all remuneration, for all hours worked in excess of 40 a workweek.

134. Throughout the relevant period, Alcoa has imposed its pre-shift off the clock policy and bonus pay scheme on Deruchia and the other FLSA Collective Members.

135. Deruchia and the other FLSA Collective members have been harmed as a direct and proximate result of Alcoa's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Alcoa derived a direct and substantial benefit.

136. Alcoa knowingly, willfully, and/or in reckless disregard of the FLSA carried out this pattern and practice of failing to pay Deruchia and the other FLSA Collective Members overtime compensation at the required premium rate for all overtime hours worked.

137. Alcoa's failure to pay Deruchia and the other FLSA Collective Members overtime for all overtime hours worked at the required rate, based on all remuneration, was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

138. Accordingly, Deruchia and the other FLSA Collective Members are entitled to recover the difference between the overtime wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### COUNT II
**FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL**
**(NEW YORK CLASS)**

139. Deruchia brings his NYLL claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

140. Alcoa's conduct violates the NYLL and its implementing regulations. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

141. At all relevant times, Alcoa was subject to the NYLL because Alcoa was an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

142. At all relevant times, Alcoa employed Deruchia and each Hourly Employee as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

143. The NYLL requires employers, like Alcoa, to pay non-exempt employees, including Deruchia and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 a workweek. NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

144. Deruchia and the other Hourly Employees are entitled to overtime pay under the NYLL.

145. Alcoa violated the NYLL by employing non-exempt employees (Deruchia and the other Hourly Employees) for workweeks longer than 40 hours without paying such employees

overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

146. Alcoa's unlawful conduct harmed Deruchia and the other Hourly Employees by depriving them of the premium overtime wages they are owed.

147. Accordingly, Alcoa owes Deruchia and the other Hourly Employees the difference between the rate actually paid and the required overtime rate, plus interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

148. Because Alcoa acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law, Alcoa is also liable to Deruchia and the other Hourly Employees for an amount equal to all their unpaid wages as liquidated damages. *See* NYLL §§ 198(1-a) and 663(1).

149. Finally, Deruchia and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(4).

## JURY DEMAND

150. Deruchia demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Deruchia, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

    c. An Order appointing Deruchia and his counsel to represent the interests of the Hourly Employees;

  d.  An Order finding Alcoa liable to Deruchia and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

  e.  An Order finding Alcoa liable to Deruchia and the New York Class Members for all unpaid overtime wages owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages;

  f.  A Judgment against Alcoa awarding Deruchia and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA or NYLL;

  g.  An Order awarding attorneys' fees, costs, and expenses;

  h.  Pre- and post-judgment interest at the highest applicable rates; and

  i.  Such other and further relief as may be necessary and appropriate.

Dated: January 8, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: /s/ *Michael A. Josephson*
    Michael A. Josephson
    PA ID No. 308410
    Andrew W. Dunlap
    TX Bar No. 24078444
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Phone: (713) 352-1100
    Fax:    (713) 352-3300
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    Richard J. (Rex) Burch
    TX Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Phone: (713) 877-8788
    Fax:    (713) 877-8065
    rburch@brucknerburch.com

    Joshua P. Geist
    PA ID No. 85745
    William F. Goodrich
    PA ID No. 30235
    **GOODRICH & GEIST, PC**
    3634 California Avenue
    Pittsburgh, Pennsylvania 15212
    Phone: (412) 766-1455
    Fax:    (412) 766-0300
    josh@goodrichandgeist.com
    bill@goodrichandgeist.com

**ATTORNEYS FOR DERUCHIA & THE HOURLY EMPLOYEES**